UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVIS WILSON,

      Petitioner,

                                Civil No. 2:21-cv-10464

   v.

                                Hon. George Caram Steeh

JOHN DAVIDS,

      Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OFAPPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

This is a habeas action filed under 28 U.S.C. § 2254. Michigan prisoner Travis Wilson challenges his bench trial convictions for second-degree murder, Mich. Comp. Laws § 750.317; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b, in the Wayne County Circuit Court. He raises nine claims on habeas review. For the reasons discussed below, the Court denies the habeas petition with prejudice. The Court will also deny a certificate of appealability and deny leave to appeal in forma pauperis should Petitioner choose to appeal this decision.

## I.    BACKGROUND

Petitioner's convictions arose from a dispute that turned into a deadly

shooting. The following facts as recited by the Michigan Court of Appeals

are presumed correct on habeas review. *Wagner v. Smith*, 581 F.3d 410,

413 (6th Cir. 2009); 28 U.S.C. § 2254(e)(1):

> Defendant's convictions arise from the July 15, 2016 shooting
> death of Cedric Smith in Detroit. The prosecution presented
> evidence that the shooting was preceded by a quarrel involving
> several individuals and spectators. Defendant arrived at the
> scene and attempted to break up some fighting. One of the
> participants wanted to fight defendant, but then Smith
> intervened and struck defendant in the face. Afterward,
> defendant obtained a gun from another man. Defendant then
> fired several gunshots and threatened the crowd of people, who
> scattered. Witnesses testified that defendant chased Smith
> between two houses and additional gunshots were heard. After
> the gunfire stopped, Smith's body was found in a nearby vacant
> lot; he had been shot several times and died from his wounds.
> After the shooting, witnesses saw defendant running from the
> area and getting into a vehicle. The police arrived before the
> vehicle left and witnesses alerted the police to the vehicle,
> identifying defendant as the person who shot Smith. The police
> pursued defendant and arrested him within 15 or 20 minutes of
> the shooting.
>
> The defense theory at trial was that there were at least two
> other people armed with guns at the scene and there was no
> credible evidence identifying defendant as the person who shot
> Smith. The defense further argued that this was "not a first-
> degree premeditated murder case." Accordingly, defense
> counsel requested "a not guilty verdict . . . or at the very least
> dismissal of the premeditation murder charge."
>
> The trial court found beyond a reasonable doubt that the
> evidence established defendant's identity as the person who

shot Smith, but did not establish that defendant acted with premeditation and deliberation. Accordingly, the court found defendant guilty of the lesser offense of second-degree murder and the two firearm charges.

*People v. Wilson*, No. 340542, 2019 WL 3521932, at \*1 (Mich. Ct. App. Aug. 1, 2019).

The trial court found Petitioner guilty of second-degree murder, felon-in-possession, and felony-firearm. The trial court sentenced Petitioner as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to prison terms of 35 to 60 years for the murder conviction and two to five years for the felon-in-possession conviction, to be served concurrently, but consecutive to a five-year term of imprisonment for the felony-firearm conviction. *Id*. at \* 1.

Petitioner appealed his convictions and sentence to the Michigan Court of Appeals, raising the following claims:

I.      Is the Defendant-Appellant entitled to reversal of his conviction where trial counsel provided ineffective assistance of counsel such as depriving him of the right to a fair trial thereby violating his right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution?

II.     Is Mr. Wilson entitled to reversal of his conviction and re-instatement of his original plea offer where trial counsel was ineffective for not reviewing the record and establishing that Mr. Wilson was indeed offered a plea to 22 years plus 2 years by the people?

III.   Did the trial court err in imposing a sentence which violates the principle of proportionality as set forth by *People v Milbourn* and is unreasonable in violating *People v Lockridge* thereby entitling the Defendant-Appellant to re-sentencing?

Petitioner additionally filed his own pro se brief, known in Michigan as a Standard 4 Brief, in which he raised the following claim:

I.   Defendant Mr. Wilson was deprived of his due process rights under the 14th Amendment to the United States Constitution and under Section 17, Article I, Michigan Constitution 1963, where he is actually innocent of the crime he is convicted of.

He later filed an amended Standard 4 Brief, raising additional claims:

I.   Is Defendant-Appellant bindover an abuse of discretion when in fact prosecution's witnesses engaged in unreliable testimony to the factual conclusion that Defendant had no justifiable reasons to harm, when especially prosecution's key witness Robert Byles demonstrated the intent to harm following two "tussles" with the deceased, denying Defendant fairness under the Fourteenth Amendment?

II.   Was Mr. Wilson denied effective assistance of counsel under the hearsay rule exception to present testimony and evidence that someone else committed the crimes, especially when the police had probable cause evidence of prosecution's key witness Robert Byles had intent to harm the deceased and lied to police thereafter, thus denying a fair trial under due process?

III.   Was Mr. Wilson denied constitutional fairness by trial prosecution's misconduct when it presented a witness that wasn't previously indicated on the witness list or discovery package, thus violating the Brady rule and MCR

- 4 -

6.201(B), and the confrontational clause to the United
States Constitution?

IV.    Was Mr. Wilson proved beyond a reasonable doubt that
he couldn't have committed the offenses, thus leading to
the motion to directed verdict that was denied under an
unconstitutional abuse of discretion of the United States
Constitution due process clause?

V.     Was court appointed appellate counsel and appointed trial
counsel together ineffective for failing to raise the above
aforementioned constitutional claims on direct appeal,
thereby establishing the requisite "cause" of MCR
6.508(D)(3)(a)?

On August 1, 2019, the Michigan Court of Appeals issued an opinion

rejecting Petitioner's arguments and affirming his convictions and sentence.

*Wilson*, 2019 WL 3521932, at *1. Petitioner filed an application for leave to

appeal in the Michigan Supreme Court.  On April 29, 2020, the supreme

court denied the application.  *People v. Wilson*, 505 Mich. 1039, 941

N.W.2d 622, 623 (2020).

On February 19, 2021, Petitioner filed the present habeas petition in

this Court, raising the same nine claims presented to the Michigan Court of

Appeals on direct review.  The Court understands the present petition as

raising the following claims:

I.     Defendant is entitled to reversal of his conviction where
trial counsel provided ineffective assistance of counsel
such depriving him of the right to a fair trial thereby
violating his right to due process as guaranteed by the
14th Amendment to the United States Constitution.

- 5 -

II.   Defendant is entitled to reversal of his conviction and reinstatement of his original plea offer where trial counsel was ineffective for not reviewing the record and establishing that Defendant was indeed offered a plea to 22 years plus 2 years by the state.

III.   The trial court erred in imposing a sentence which violates the principle of proportionality as set forth by *People v. Milbourn* and is unreasonable in violation of *People v. Lockridge* thereby entitling Defendant to re-sentencing.

IV.   Defendant was deprived of his due process right under the 14th Amendment to the United States Constitution and under Section 17, Article 1, Michigan Constitution 1963 where he is actually innocent of the crime he is convicted of.

V.   The bind[ov]er was an abuse of discretion when in fact prosecution's witnesses engaged in unreliable testimony to the factual conclusion that Defendant had no justifiable reasons to harm, when especially prosecution key witness (Robert Byles) demonstrated the intent to harm following two physical "tussles" with the deceased denying Defendant fairness under the 14th Amendment.

VI.   Defendant was denied effective assistance of counsel under the hearsay exception to present testimony and evidence that someone else committed the crime especially when the police had probable cause evidence of prosecution's key witness (Robert Byles) had intent to harm the deceased and lied to police thereafter, thus, denying a fair trial under due process.

VII.   Defendant was denied constitutional fairness by trial prosecution's misconduct when it presented a witness that wasn't previously indicated on the witness list of discovery package. Thus, violating the Brady rule; MCR

6.201(B), and the confrontational clause to the United States Constitution.

VIII. Defendant proved beyond a reasonable doubt that he couldn't have committed the offenses thus leading to the motion to directed verdict that was denied under an unconstitutional abuse of discretion of the United States Constitution due process clause.

IX. Court appointed appellate counsel and appointed trial counsel together was ineffective for failing to raise the above aforementioned constitutional claims on direct appeal thereby establishing the requisite cause of MCR 6.508(D)(3)(a).

*See* Pet., ECF No. 1, PageID.16

On October 4, 2021, the Court dismissed the case because Petitioner failed to comply with the Court's deficiency order directing him to either pay the $5.00 filing fee or submit an application to proceed in forma pauperis. (ECF No. 5.)   On October 8, 2021, Petitioner wrote to the Court and explained that he had submitted the $5.00 filing fee and presented his prison account statement showing the amount had been taken from the account for the filing fee.  The Court then granted Petitioner's application to proceed in forma pauperis, re-opened the case, and directed Respondent to file an answer to the petition with the relevant Rule 5 materials.  (ECF No. 7.)  On June 17, 2022, Respondent filed an answer contending that one of Petitioner's claims is procedurally defaulted, and all claims lack merit.

## II.   STANDARD OF REVIEW

The following standard of review applies to § 2254 habeas petitions:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law if it either (1) applies a standard different than what Supreme Court precedent instructs to apply or (2) applies the correct precedent to materially indistinguishable facts but reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 397, 405–06, 413 (2000). But a state court decision that applies a state-law standard is not "contrary to" clearly established federal law if the state standard is practically similar to Supreme Court precedent. *See Robertson v. Morgan*, No. 20-3254, 2020 WL 8766399, at

*4 (6th Cir. Dec. 28, 2020) (holding state decision was not "contrary to" because it applied a state-law standard bearing "some similarity" to the *Brady* standard).

The Antiterrorism and Effective Death Penalty Act's habeas provisions, 28 U.S.C. § 2255, "impose[ ] a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). Indeed, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In this way, to obtain habeas relief in federal court, a state prisoner must show that the state court's denial "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

## III.   DISCUSSION

### A. Ineffective Assistance

Petitioner raises various ineffective assistance of trial counsel claims (habeas claims I, II, IV, and IX), each of which were addressed and rejected by the Michigan Court of Appeals.  Because these claims are related, the Court will discuss them together.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. When counsel is ineffective, that right is abridged. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential."  *Id*. at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the

proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003). (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Success on ineffective assistance of counsel claims is relatively rare, because the *Strickland* standard is " 'difficult to meet.' " *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)).  And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted).  This

doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 562 U.S. at 105.

### 1. Witnesses

Petitioner first argues that trial counsel was ineffective for failing to call Delisha Young as a defense witness.  Petitioner argues that Young was in the passenger seat of his girlfriend's car the time of the shooting incident and, therefore, present at the scene.  Petitioner claims that Young would have provided exculpatory testimony had she been called to at testify at trial.  The Michigan Court of Appeals rejected Petitioner's argument, concluding that:

> Although defendant asserts that Young would have provided exculpatory testimony, he never submitted an affidavit from Young showing what testimony she would have provided if called to testify. Defendant relies on his own affidavit in which he merely avers that Young "would have provided exculpatory testimony", but defendant again fails to specify what testimony she would have offered or how it would have been exculpatory. Because defendant did not satisfy his burden of producing factual support for his claim that Young would have provided favorable testimony, the trial court did not err by denying defendant's motion for a new trial on this ground.

*Wilson*, 2019 WL 3521932, at *2.

The Michigan Court of Appeals' decision was not unreasonable. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins*, 539 U.S. at, 522-23. The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). However, "[i]f counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective." *Strickland*, 466 U.S. at 481. Moreover, "[d]ecisions as to what evidence to present and whether to call or question witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004). "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681.

Petitioner fails to show that counsel's decision not to call Young was anything other than trial strategy. Petitioner's girlfriend, Tiara Vann, testified

that Young was laying down in the back seat of her car when the shooting

occurred.  (ECF No. 11-14, PageID.975.)  Petitioner has offered no

evidence suggesting that Young witnessed the shooting or the altercations

that preceded it.  Moreover, Petitioner has not offered any evidence as to

what Young's testimony would have been at trial.  *See Tinsley v. Million*,

399 F.3d 796, 810 (6th Cir. 2005) ("[Petitioner] has not introduced affidavits

or any other evidence establishing what [potential witnesses] would have

said . . . . In the absence of any evidence showing that they would have

offered specific favorable testimony, [Petitioner] cannot show prejudice from

counsel's strategy recommendation not to introduce this evidence.").  For

these reasons, Petitioner has not established that counsel was ineffective

for failing to call Young as a witness.

Next, Petitioner argues that trial counsel was ineffective for calling

Kadijah Byles and Patricia Jones as witnesses based on their unfavorable

testimony.  The Michigan Court of Appeals disagreed.  Although both

witnesses ultimately offered testimony that was harmful to the defense, the

court determined that counsel's actions were nonetheless objectively

reasonable:

> Although both women gave testimony that ultimately was
> unfavorable to defendant, they both had given prior police
> statements that differed from their trial testimony and could be
> considered favorable to defendant. In her statement, Byles

denied knowing the shooter and did not mention defendant. She also described seeing another man shooting as she ran into her house. This statement supported the defense theory at trial that there were other persons armed with guns present at the scene who could have shot Smith. Jones testified at trial that she did not know defendant at the time of this incident. In her statement to the police, she stated that she did not see anyone shooting and she did not mention defendant. Jones's police statement provided counsel with an objective basis for believing that her testimony would not be harmful to defendant. Jones also testified at trial that she heard another spectator speak to the occupants of a red Magnum and call for a "chopper." This testimony also supported the defense theory of an alternative shooting suspect. In sum, the record reveals that defense counsel had objective grounds for believing that Byles and Jones would be able to offer favorable testimony that could support the defense theory of an alternative shooting suspect. "The fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel." *People v. Williams*, 240 Mich. App. 316, 332, 614 N.W.2d 647 (2000).

*Wilson*, 2019 WL 3521932, at *4.

The Michigan Court of Appeals' rejection of this claim was not contrary to established federal law or the facts. As stated, "[d]ecisions as to what evidence to present and whether to call or question witnesses are presumed to be a matter of trial strategy." Chegwidden, 92 F. App'x at 311. It is true that these witnesses provided harmful testimony. Byles corroborated the testimony of other witnesses regarding Petitioner obtaining a gun and both witnesses stated that Petitioner was armed with a gun and was the only person chasing victim just before he was shot.

However, the Court agrees that the witnesses' prior police statements show that their testimony could have been favorable to the defense.  During direct examination, defense counsel impeached each witness with their prior statements. Byles' statement did not mention that Petitioner was the shooter; in fact, her statement suggested that the shooter was a man unknown to her, and Byles testified that she knew Petitioner for approximately two years.  (ECF No. 11-14, PageID.933-934, 941.) Similarly, Jones's statement did not identify any individual as the shooter and did not mention Petitioner, leaving open the possibility that someone else shot the victim. (ECF No. 11-15, PageID.1029-1031.) Based on the witnesses' statements, defense counsel had reason to believe that their testimony would have supported the defense's theory that someone other than Petitioner was the shooter.  The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective assistance of counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Lastly, Petitioner argues that counsel was ineffective for calling his mother, Gearline Williams, to testify. The Michigan Court of Appeals rejected this argument on the basis that Petitioner failed to properly

develop and support the argument on appeal.  *Wilson*, 2019 WL 3521932,

at *4.  The Court agrees.  To the extent Petitioner raises this claim on

habeas review, he fails to provide any argument explaining why Williams

provided prejudicial testimony.  "It is not this Court's job to scour the record

for information and evidence that could potentially corroborate and support

Petitioner's argument." *Hartwell v. United States*, No. 04-40023, 2005 WL

3478380, at *7 (E.D. Mich. Dec. 20, 2005) (Gadola, J.).  He is not entitled

to relief on this claim.

### 2.  Tacking-Dog Evidence

Next, Petitioner argues that counsel was ineffective for failing to

object to the admission of the tracking-dog evidence.  Specifically, he

claims that the prosecutor did not lay a proper foundation for admitting the

testimony of Bureau of Alcohol, Tobacco, and Firearms and Explosives

Agent Jason Salerno.  Salerno testified regarding his use of his explosive

detection canine, Jax. (ECF No. 11-13, PageID.773.)  According to Salerno,

Jax alerted to the presence of gunshot residue on a door handle of the

vehicle that Petitioner fled from after it was stopped by the police, and also

on Petitioner's pants while he was detained in the police car.  (*Id*. at

PageID.778-780.)

The Michigan Court of Appeals ruled that the tracking-dog evidence was properly admitted during trial. *Wilson*, 2019 WL 3521932, at *3 ("In sum, the record reveals that a proper foundation for admitting Salerno's testimony regarding the use of his explosives-detecting dog was established at trial."). The Court "must defer to state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quotation omitted). Because the evidence was properly admitted, any objection made by trial counsel would have been futile. Attorneys do not provide constitutionally ineffective assistance for electing not to take futile actions, *Richardson v. Palmer*, 941 F.3d 838, 857 (6th Cir. 2019) (citing *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000)), or for "failing to raise . . . meritless arguments," *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999); *see also Downs v. United States*, 879 F.3d 688, 691 (6th Cir. 2018); *Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017). Petitioner fails to establish an ineffective-assistance-of-counsel claim on this basis.

### 3. Plea Negotiations

Petitioner next claims that trial counsel was ineffective for failing to review the record and reinstate his original plea offer of 22 to 40 years for second-degree murder, plus two years for felony-firearm.

The Michigan Court of Appeals rejected this argument in a

comprehensive analysis:

> Defendant was represented by three different attorneys throughout this case, each of whom engaged in plea discussions with the prosecutor. On October 14, 2016, defendant was offered a plea deal whereby he would receive a sentence of 22 to 40 years for second-degree murder, plus two years for felony-firearm, in exchange for dismissal of the remaining charges. He rejected that offer. At another hearing on February 13, 2017, the prosecutor offered defendant 22 to 50 years for second-degree murder, plus two years for felony-firearm, which he again rejected. At a hearing on April 28, 2017, the prosecutor offered 20 years for second-degree murder and five years for felony-firearm. At this hearing, defendant denied being aware that he was facing a five-year prison sentence for felony-firearm, but the trial court and the attorneys explained to him that he was subject to a five-year penalty because this was his second felony-firearm offense. Defendant rejected this offer on the record, and rejected it again at another pretrial conference on May 2, 2017, the last day available for accepting the offer.

> Defendant now argues that his third attorney was ineffective because he was unaware of the original plea offer of 22 years for second-degree murder, plus two years for felony-firearm. Defendant contends that he should now be permitted to accept that offer. We disagree.

> In *People v. Douglas*, 496 Mich. 557, 591-592, 852 N.W.2d 587 (2014), our Supreme Court set forth the standard that a defendant must satisfy to prove ineffective assistance of counsel with regard to a plea offer:

> > As at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. ——, ——; 566 U.S. 156, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012). A defendant seeking relief for ineffective

> assistance in this context must meet Strickland's
> familiar two-pronged standard by showing (1) "that
> counsel's representation fell below an objective
> standard of reasonableness," and (2) "that there is a
> reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding
> would have been different." *Id.* at ——; 132 S. Ct. at
> 1384. In demonstrating prejudice, the "defendant
> must show the outcome of the plea process would
> have been different with competent advice." Id. at —
> —; 132 S. Ct. at 1384. Where, as here, the alleged
> prejudice resulting from counsel's ineffectiveness is
> that the defendant rejected a plea offer and stood
> trial, a defendant must show that but for the
> ineffective advice of counsel there is a reasonable
> probability that the plea offer would have been
> presented to the court (i.e., that the defendant would
> have accepted the plea and the prosecution would
> not have withdrawn it in light of intervening
> circumstances), that the court would have accepted
> its terms, and that the conviction or sentence, or
> both, under the offer's terms would have been less
> severe than under the judgment and sentence that in
> fact were imposed. [*Id.* at ——; 132 S. Ct. at 1385.]

When evaluating a plea offer, "[d]efense counsel must explain
to the defendant the range and consequences of available
choices in sufficient detail to enable the defendant to make an
intelligent and informed choice." *People v. Jackson*, 203 Mich.
App. 607, 614, 513 N.W.2d 206 (1994). In *People v. Corteway*,
212 Mich. App. 442, 446, 538 N.W.2d 60 (1995), this Court
explained:

> The decision to plead guilty is the defendant's, to be
> made after consultation with counsel and after
> counsel has explained the matter to the extent
> reasonably necessary to permit the client to make
> an informed decision. See MRPC 1.2(a) and MRPC
> 1.4(b). While an attorney may elect to offer a client
> a specific recommendation whether to go to trial or

to plead guilty in the course of that consultation, we decline to hold that such a recommendation is required or that the failure to provide such a recommendation necessarily constitutes ineffective assistance of counsel. The test is whether the attorney's assistance enabled the defendant to make an informed and voluntary choice between trial and a guilty plea.

Defendant is correct that he was originally offered a plea deal of 22 years for second-degree murder, plus two years for felony-firearm. It appears that at later hearings, the prosecutor and defendant's third attorney were confused or unaware of the terms of the original offer. Regardless, it is undisputed that the original offer was conveyed to defendant and that he rejected it on two separate occasions, first on October 14, 2016, and again on February 13, 2017. Even if defendant's third attorney was unaware of these prior offers, defendant was not entitled to have the offers remain open after having rejected them. Defendant has not explained how he was prejudiced by his third attorney's limited knowledge of the previous offers, particularly when defendant himself was aware of the offers and expressly rejected them.

Defendant complains that the attorneys originally did not realize that he was charged with felony-firearm, second offense, which is subject to a mandatory five-year prison term. Thus, the earlier offers, which included only a two-year term for felony-firearm, were incorrect. But this does not entitle defendant to now obtain the benefit of the original offers. The trial court determined that, because defendant was actually charged with felony-firearm, second offense, he was not entitled to relief because, if he had attempted to plead guilty pursuant to an offer for a two-year term, "there is not a reasonable probability that the offer would have been accepted by this Court." The trial court also found that defendant was not entitled to the benefit of the original offer of 22 years for second-degree murder and two years for felony-firearm because "there is not a reasonable probability that the defendant would have accepted the original offer." Because the record shows that defendant was twice made fully aware of that

original offer and rejected it both times, the trial court's finding is
not clearly erroneous. Accordingly, defendant is not entitled to
relief on his claim that he was denied the effective assistance of
counsel during plea negotiations.

*Wilson*, 2019 WL 3521932, at *4-6.

The Michigan Court of Appeals' decision was not contrary to federal

law or clearly established Supreme Court precedent. The Sixth

Amendment right to counsel extends to the plea-bargaining process. *Lafler*

*v. Cooper*, 566 U.S. 156, 163 (2012); *Missouri v. Frye*, 566 U.S. 134, 143-

44 (2012). Thus, a criminal defendant during plea negotiations is "entitled

to the effective assistance of competent counsel." *Lafler*, 566 U.S. at 162

(quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

In the context of an ineffective assistance of counsel claim involving

a defendant having rejected a plea offer from the prosecution, in order to

establish that he or she was prejudiced by counsel's alleged deficiency,

the defendant must show that but for the ineffective advice of counsel

there is a reasonable probability that the plea offer would have been

presented to the court, i.e., that the defendant would have accepted the

plea and the prosecution would not have withdrawn it in light of intervening

circumstances. The defendant must also show that the court would have

accepted its terms, and that the conviction or sentence, or both, would

have been less severe than under the judgment and sentence that in fact were imposed. *Id.*, at 164.

Petitioner was represented by three different attorneys during his plea negotiations. On October 14, 2016, the trial court held a final conference hearing where the prosecutor offered a plea deal of 22 to 40 years for second-degree murder, plus two years for felony-firearm. (ECF No. 11-5, PageID.466.) Petitioner was represented by his initial appointed counsel at the time, and after a full discussion with his counsel, he rejected the offer. (*Id.* at PageID.468.) Defense counsel subsequently moved to withdraw from the case, which the court permitted. (ECF No. 11-6, PageID.477.) At another hearing on February 13, 2017, the prosecutor made second plea offer of 25 to 50 years for second-degree murder, plus two years. (ECF No. 11-7, PageID.484.) Petitioner was represented by new counsel. Petitioner raised the issue that the offer was different from the initial offer of 22 to 40 years. The parties deliberated the matter. The prosecution agreed to a plea offer of 22 to 50 years. (*Id.* at PageID.487.) Petitioner rejected it. (*Id.*) Petitioner then requested a new attorney based on a breakdown of the attorney-client relationship, which the court granted. (*Id.* at PageID.495-496.)

At a final conference on April 28, 2017, the prosecutor offered a third plea deal of 20 years for second-degree murder and five for felony-firearm. (ECF No. 11-10, PageID.524.)  Petitioner was represented by his third appointed attorney.  The prosecutor represented that the last plea offer was 20 years plus 5 years, and Petitioner indicated that he was unaware of that offer being made in previous plea negotiations.  (*Id*. at PageID.524.) The trial court advised Petitioner on the charges and informed him that the felony firearm second offense notice carried a mandatory five-year consecutive sentence, and therefore, a "plus 2" offer was not available to him.  (*Id* at. PageID.531.) The court allowed Petitioner until May 2, 2017, to consider the offer.  Petitioner again moved to appoint new counsel, which the court denied.  On May 2, 2017, Petitioner rejected the plea offer. (ECF No. 11-11, PageID.543.)

Petitioner cannot prevail on his ineffective assistance of counsel claim.  First, Petitioner has not shown that he would have accepted the plea deal of 22 to 40 years, plus 2 years had his third attorney uncovered its existence.  *Lafler*, 566 U.S. at 164.  At the very least, Petitioner was not prejudiced by his third attorney's alleged deficiency in failing to explore the terms of first plea offer or to ask the prosecutor to reinstate the offer, because he failed to show that he would have unequivocally pleaded guilty

to the charges given his previous rejection of the plea offer, as well his rejection of the second similar offer. *See Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005). Indeed, trial counsel could not have been ineffective in failing to seek from the prosecutor, or advise petitioner about, a plea bargain offer that had been rejected before he took over the case. *See Parrino v. Archuleta*, 630 F. App'x. 739, 741 (10th Cir. 2015).

Second, Petitioner has offered no clear and convincing evidence that the original plea deal of 22 to 40 years, plus 2 years remained open after he rejected the offer, even if the parties were mistaken as to its terms. The prosecutor indicated that the third offer of 20 years plus 5 was a firm offer, not subject to change, which suggests that even if the terms of the initial offer were discovered, those terms would not have been reinstated. For these reasons, Petitioner is not entitled to relief on his claim.

### 4. Hearsay Evidence

Petitioner's argument with respect to counsel's ineffectiveness regarding hearsay evidence is difficult to follow. The Court interprets the claim as asserting that defense counsel was ineffective for failing to object to the admission of Robert Byles' trial testimony based on the hearsay rule. Petitioner states that Byles testified inconsistently during his preliminary examination. He argues that the discredited testimony rendered it

inadmissible hearsay at trial. Petitioner also suggests that counsel should have utilized the preliminary examination testimony of Johnnie B. Stafford, which he claims shows that Byles was the individual who chased after the victim. The Michigan Court of Appeals disagreed, stating that:

> Finally, defendant claims he was denied the effective assistance of counsel. Defendant first cites testimony taken during the preliminary examination and states that his then-counsel cross-examined a prosecution witness about how the witness had lied to the police. Defendant asserts that because the witness, Robert Byles', testimony was discredited at the preliminary examination, it was inadmissible hearsay. Defendant has offered no authority, however, to suggest that discredited or changing testimony constitutes hearsay and this Court is not aware of any such finding. Moreover, defendant cites only to the preliminary examination testimony of this witness. Defendant does not point to any error or ineffective assistance on the part of counsel during the preliminary examination. The witness testified at trial as well, and defendant has identified no testimony of the witness at trial that should have been objected to.
>
> Defendant next relates testimony of one of the prosecution's trial witnesses and appears to argue that counsel was ineffective for failing to point out that the witness testified that Robert Byles was the one who went between the houses where the shots were heard. Defendant misstates the relevant testimony.
>
> * * *
>
> Stafford also testified that he "saw the shooter look in that direction and ran in between the two houses" and that he "heard two more shots after he ran between the houses." Stafford did not identify anyone but the shooter running between the two houses, whom he stated was defendant. There is thus no discernable claim of ineffective assistance of counsel advanced by defendant.

*Wilson*, 2019 WL 3521932, at *10.

The Michigan Court of Appeals' decision was not unreasonable.  This Court defers to the court of appeals' ruling that the challenged testimony did not constitute hearsay under Michigan law.  *Miskel*, 397 F.3d 446 at 453.  Additionally, the Court has reviewed the record and agrees that Petitioner misstates Stafford's preliminary examination testimony.  Therefore, counsel was not ineffective for failing to raise a meritless objection or advance a frivolous argument.  Petitioner is not entitled to relief on this claim.

### 5.  Ineffective Assistance of Trial and Appellate Counsel

Lastly, Petitioner appears to argue that trial and appellate counsel were ineffective for failing to raise his Standard 4 brief issues on direct appeal.  Petitioner conflates several legal principles in his argument, including procedural default under Mich. Ct. R. 6.508.  The Michigan Court of Appeals rejected his argument, stating that Petitioner "inappropriately relie[d] on a court rule governing motions for relief from judgment, MCR 6.508, which is not applicable to this direct appeal." *Wilson*, 2019 WL 3521932, at *7. The Michigan Court of Appeals rejection of Petitioner's claim on this basis was not unreasonable.

Further, to the extent Petitioner asserts that appellate counsel was ineffective for failing to raise the claims contained in Petitioner's Standard 4

brief on direct appeal, his argument lacks merit. The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005). Petitioner has not established that he was prejudiced by appellate counsel's actions because the Michigan Court of Appeals addressed his Standard 4 arguments on direct review. Petitioner is not entitled to relief.

### B. Sentencing Claim

Petitioner argues that he is entitled to re-sentencing on the basis that his sentence is disproportionate under *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). Petitioner raised this proportionality argument on direct appeal, and the court of appeals rejected it. *Wilson*, 2019 WL 3521932, at *6-7.

To the extent Petitioner believes that his sentence is disproportionate because the trial court sentenced him "at the top of the correctly scored guidelines" (ECF No. 1, PageID.46), the term disproportionate is derived from state court authority regarding sentencing. *See People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017); *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). As noted above, "a federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.' " *Wilson v. Corcoran*,

562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). Thus, any claim by Petitioner that the trial court violated state sentencing guidelines or state sentencing principles regarding disproportionality is purely a state law claim that is not cognizable on habeas review.

Moreover, the United States Constitution does not require that sentences be proportionate. In *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), a plurality of the United States Supreme Court concluded that the Eighth Amendment does not contain a requirement of strict proportionality between a crime and sentence. Rather, the Eighth Amendment forbids "only extreme sentences that are grossly disproportionate to the crime." *Id*. at 1001 (internal quotation marks omitted). A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F. 3d 298, 302 (6th Cir. 2000). Courts reviewing Eighth Amendment proportionality must remain highly deferential to the legislatures in determining the appropriate punishments for crimes. *United States v. Layne*, 324 F.3d 464, 473-74 (6th Cir. 2003) (citing *Harmelin*, 501 U.S. at 999). "In implementing this 'narrow proportionality principle,' the Sixth Circuit has recognized that 'only an extreme disparity between crime and sentence offends the Eighth Amendment.' " *Cowherd v. Million*, 260 F. App'x. 781, 785 (6th Cir. 2008) (quoting *United States v.*

*Marks*, 209 F.3d 577, 583 (6th Cir. 2000)). As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining "the type and extent of punishment for convicted defendants." *Williams v. New York*, 337 U.S. 241, 245 (1949).

Here, Petitioner's sentence of 35 to 60 years in prison was within the statutory limits for the offense of second-degree murder, which carries a maximum sentence of life imprisonment. *See* Mich. Comp. Laws § 750.317. Petitioner concedes that his sentence is within the applicable sentencing guidelines range. "In Michigan, sentences within a correctly scored guidelines range are presumptively proportionate." *Hastings v. Yukins*, 194 F. Supp. 2d 659, 673-674 (E.D. Mich. 2002) (citing *People v. Bailey*, 218 Mich. App. 645, 647; 554 N. W. 2d 391 (1996)). Thus, Petitioner is not entitled to relief.

## C. Actual Innocence

Petitioner claims that he is entitled to habeas relief because he is actually innocent of the charges on the basis that the evidence presented against him was insufficient and certain trial testimony was perjured and recanted. (ECF No. 1, PageID.68-70.) However, claims of actual innocence based on newly discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional

violation occurring in the underlying state criminal proceeding." *Herrera v.*

*Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure

that individuals are not imprisoned in violation of the Constitution—not to

correct errors of fact." *Id*. In *House v. Bell*, the Supreme Court declined to

answer the question left open in *Herrera*—whether a habeas petitioner may

bring a freestanding claim of actual innocence. *See House v. Bell*, 547 U.S.

518, 555 (2006) (noting that "in a capital case a truly persuasive

demonstration of 'actual innocence' made after trial would render the

execution of a defendant unconstitutional and warrant federal habeas relief

if there were no state avenue open to process such a claim"").

Consequently, Petitioner's claim that he is actually innocent fails to state a

claim upon which habeas relief can be granted.

### D. Bind Over

Petitioner alleges that the state district court abused its discretion by

binding him over to circuit court for trial.  Petitioner contends that the district

court's bind over was erroneous because it was premised upon the

inconsistent and unsubstantiated testimony of witnesses Johnnie B.

Stafford, Robert Byles, and Marshera Smith.  The Michigan Court of

Appeals disagreed and ruled that "[b]ecause we find that sufficient

evidence was adduced at trial to uphold defendant's convictions, we need

not address his claim of an erroneous bindover." *Wilson*, 2019 WL 3521932, at *8. No error resulted from that decision. The bind-over decision itself invokes a question of state law, which is not cognizable on habeas corpus review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Dorchy v. Jones*, 320 F. Supp. 2d 564, 578-79 (E.D. Mich. 2004) (denying habeas relief on the petitioner's claim there was insufficient evidence to bind him over for trial). Petitioner, therefore, is not entitled to relief on his claim.

### E. Motion for Directed Verdict

Petitioner asserts that he is entitled to habeas relief because the trial court erred in denying his directed verdict motion. The Respondent contends that this claim is not cognizable in part and that it lacks merit.

Petitioner raised this claim on direct appeal. The Michigan Court of Appeals considered the claim, in part, as a challenge to the sufficiency of the evidence and denied relief. The court explained:

> We review a challenge to the sufficiency of evidence offered in support of a conviction by viewing the evidence and reasonable inferences arising from the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find each element of the crime proven beyond a reasonable doubt. *People v. Petrella*, 424 Mich. 221, 268-270, 275, 380 N.W.2d 11 (1985). Defendant was charged with first-degree premeditated murder, but the trial court found insufficient evidence of premeditation and deliberation and instead convicted defendant of the lesser offense of second-

- 32 -

degree murder. Defendant does not argue that the evidence was insufficient to prove that Smith was killed under circumstances that would constitute second-degree murder.4 Rather, he argues that the evidence was insufficient to identify him as the person who killed Smith. We disagree.

Identity is an essential element of every offense. *People v. Yost*, 278 Mich. App. 341, 356, 749 N.W.2d 753 (2008). Positive identification by witnesses can be sufficient to support a conviction. *People v. Davis*, 241 Mich. App. 697, 700, 617 N.W.2d 381 (2000). The credibility of identification testimony is a question for the trier of fact to resolve and this Court will not resolve the issue anew. *Id*.

Multiple witnesses who were familiar with defendant identified him as the person who obtained a gun from a bystander and began shooting while approaching the group of participants and spectators from an earlier fight. Witnesses testified that defendant chased after Smith and followed him between two houses, after which several gunshots were heard. Minutes later, Smith's body was found nearby and he had been shot several times. Although witnesses did not actually see defendant shoot Smith after the two men disappeared between the houses, the evidence of defendant chasing after Smith with the gun, the timing of the gunshots, and the subsequent discovery that Smith had been shot several times supported a reasonable inference that defendant was the person who shot Smith. Accordingly, there is no merit to defendant's claim that the evidence was insufficient to prove his identity as the shooter.

Defendant also asserts that the trial court erred in denying his motion for directed verdict. This Court reviews a trial court's decision whether to deny a motion for a directed verdict de novo. *People v. Chelmicki*, 305 Mich. App. 58, 64, 850 N.W.2d 612 (2014). Viewing the evidence in the light most favorable to the prosecution, only if the evidence presented up to the time the motion is made is insufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt, must a directed verdict be entered. *Id*. As indicated above, the prosecution presented many witnesses who identified defendant as the only

> individual at the scene who had a gun and as the one who
> chased Smith between two houses while armed. Given the
> prosecution's evidence, defendant was not entitled to a directed
> verdict in his favor.

*Wilson*, 2019 WL 3521932, at *8.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner contests the denial of his directed verdict motion, he fails to state a cognizable habeas claim. A claim that a trial court abused its discretion in denying a motion for directed verdict is a state law claim that is not cognizable on federal habeas review. *See King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001) (citing *Estelle*, 502 U.S. at 67-68); *see also Holloway v. Palmer*, No. 16-2450, 2017 WL 4844457, *3 (6th Cir. April 5, 2017) (citing *King*). As discussed, habeas relief does not lie for perceived violations of state law. *Estelle*, 502 U.S. at 67-68. State courts are the final arbiters of state law and that federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328; *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860.

Second, Petitioner fails to establish a violation of his federal constitutional rights. The Federal Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

*In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788

(6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim."  *Id*. at 788-789.

In this case, the prosecution presented sufficient evidence to convict Petitioner of the charged offenses. Several witnesses testified that Petitioner was present during the quarrel prior to the shooting and attempted to break up the fighting. (ECF No. 11-12, PageID.665; ECF No. 11-13, PageID.794; ECF No. 11-14, PageID.942-943.) Marshera Smith testified that she saw the victim hit Petitioner. (ECF No. 11-13, PageID.860.) Witnesses who knew Petitioner identified him as the individual who grabbed the gun from another individual and began shooting among the group. (ECF No. 11-12, PageID.665, 672, ECF No. 11-13, PageID.861.) Witnesses also testified that they saw Petitioner chase after the victim and follow him between two houses, where the victim's body was ultimately found shot multiple times. (ECF No. 11-15, PageID.1037, ECF No. 11-12, PageID.673-674.)  Moreover, Salerno testified that his explosive detection canine alerted to the presence of gunshot residue on a door handle of the vehicle that Petitioner fled from after it was stopped by the police, and also on Petitioner's pants while he was detained in the police car.  (ECF No. 11-13, PageID.778-780.) Based on this evidence, a rational

trier of fact could have found the essential elements of second-degree

murder beyond a reasonable doubt. Petitioner is not entitled to relief on this

claim.

### F. Prosecutorial Misconduct

Lastly, Petitioner raises prosecutorial misconduct claims involving

violations of *Brady v. Maryland*, 373 U.S. 83 (1963) and admission of

perjured testimony. The Court concludes that these claims are without

merit.[1]

A prosecutor's misconduct violates a criminal defendant's

constitutional rights if it " 'so infected the trial with unfairness as to make the

resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477

U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643

(1974)). Prosecutorial misconduct entails much more than conduct that is

"undesirable or even universally condemned." *Id*. at 181 (internal quotation

omitted). To constitute a due process violation, the conduct must have been

"so egregious so as to render the entire trial fundamentally unfair." *Byrd v.*

*Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

---

[1] In light of the Court's conclusion that Petitioner's prosecutorial misconduct claim lacks merit, the Court need not address Respondent's argument that the claim is procedurally defaulted.

Petitioner claims that the prosecutor committed *Brady* violations by

failing to present the actual bullet cartridge that was at the scene and by

failing to inform counsel of a last-minute witness.  Michigan Court of

Appeals rejected both arguments, reviewing for plain error.

> Defendant suggests that the prosecutor violated *Brady v.
> Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963),
> by failing to present the actual bullet cartridge that was at the
> scene. In *Brady*, the Supreme Court held that it is a violation of
> due process for the prosecution to suppress material evidence
> favorable to an accused. *Id*. at 87, 83 S. Ct. 1194. In this case,
> the prosecution presented evidence that a .40 caliber casing
> was found near the scene, but it was believed to be associated
> with a previous, recent incident at that location, not this
> shooting. There was no claim that the .40 caliber casing was
> evidence supporting defendant's guilt. Additional shell casings
> were not recovered, but testimony was presented that if
> defendant used a revolver to shoot Smith, it would not have
> ejected any casings. Regardless, because there is no evidence
> that the prosecution possessed evidence that it failed to
> disclose, defendant's claim that *Brady* was violated is without
> merit. Numerous witnesses testified that defendant was armed
> with a gun while chasing Smith between two houses, following
> which several gunshots were heard, and then it was discovered
> that Smith had been shot several times. The evidence does not
> preponderate so heavily against the trial court's verdict—that
> defendant shot Smith under circumstances constituting second-
> degree murder—that it would be a miscarriage of justice to
> allow the verdict to stand.
>
> Defendant also contends that the prosecutor engaged in
> misconduct by presenting a witness at trial that had not been
> disclosed on its prior witness list. We disagree.
>
> * * *
>
> Prior to trial, defense counsel stated his understanding that a
> witness "just came to light over the weekend." The prosecution

explained that the witness was the person in a filmed
conversation, and that the filmed conversation had been turned
over to defense counsel a long time ago, but that the
prosecution did not know the identity of the person on the film
until recently. Defense counsel posed no objection to the
presence and testimony of the witness and, in fact, stated that
he would have an opportunity to confer with that witness. MCL
767.40a(4) permits a prosecutor to add or delete from the
witnesses he or she intends to call at trial by stipulation of the
parties. Defense counsel's acknowledgment of the late witness
and his statement that he would confer with the witness could
be deemed a stipulation by the parties to allow the testimony of
the previously unnamed witness.

*Wilson*, 2019 WL 3521932, at *9.

The Michigan Court of Appeals' decision was not contrary to federal

law or clearly established Supreme Court precedent. It is well-established

that a prosecutor's failure to disclose evidence favorable to the defense

constitutes a denial of due process "where the evidence is material either to

guilt or to punishment, irrespective of the good faith or bad faith of the

prosecution." *Brady*, 373 U.S. at 87 (1963). To find a *Brady* violation, the

suppressed evidence must be material and favorable to the accused.

*Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985). Favorable evidence is

material "if there is a reasonable probability that, had the evidence been

disclosed to the defense, the result of the proceeding would have been

different." *Bagley*, 473 U.S. at 682. A *Brady* violation does not occur if

previously undisclosed evidence is disclosed during trial unless the

defendant is prejudiced by the prior non-disclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). Thus, to establish a *Brady* violation, a petitioner must show that: (i) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (ii) the evidence was favorable or exculpatory; and (iii) the evidence was material to the question of guilt. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000).

With respect to failing to produce the bullet casings, the state-court record belies Petitioner's *Brady* claim.  Testimony established that a .40-caliber shell casing was recovered near the scene of the shooting. Detective Laura Manzella testified that the bullets recovered from the victim's body did not match the .40-caliber casing.  (ECF No. 11-13, PageID.904.)  Additionally, the prosecution stipulated with the defense that the .40 caliber casing was from a previous incident that occurred before the shooting in this case. (ECF No. 11-12, PageID.566-567.) Because the shell casing was not relevant to the present case, Petitioner fails to establish that the .40 caliber casing was favorable and material to the question of his guilt.

Next, the prosecutor did not violate *Brady* by producing a late witness.  A *Brady* violation does not occur if previously undisclosed

evidence is disclosed during trial unless the defendant is prejudiced by the prior non-disclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir.1986). Well in advance of trial, the prosecution turned over a filmed conversation to defense counsel as part of its discovery. On the day of trial, defense counsel indicated that he learned that the identity of the witness who filmed the conversation had come to light over the weekend, and he intended to confer with that witness.  (ECF No. 11-12, PageID.555.)  The witness testified during trial and defense counsel cross-examined him. Moreover, defense counsel was aware of the nature of the witness's testimony based on the filmed conversation. There is no indication that Petitioner was prejudiced by the prosecutor's conduct.

Finally, Petitioner's claim that the prosecution knowingly offered perjured testimony because certain witnesses' trial testimony differed from their prior police statements lacks merit. The Michigan Court of Appeals rejected this claim on the basis the alleged inconsistencies in testimony did not equate to false testimony. *Wilson*, 2019 WL 3521932, at *9. The Court agrees.  Mere inconsistencies in testimony do not establish the knowing use of false testimony by the prosecutor.  *See Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).  Petitioner's claim lacks merit.

## IV.   CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies habeas on the merits, the substantial-showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). In applying that standard, a district court may not conduct a full-merits review; it must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Miller-El v. Cockrell*, 537 U.S. 322, 336–37 (2003). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Because reasonable jurists would not disagree that Petitioner has not substantially showed the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2). And Petitioner will be

denied leave to appeal *in forma pauperis* because his appeal would be

frivolous. *See* FED. R. APP. P. 24(a).

## V.   CONCLUSION

Accordingly, it is **ORDERED** that the Petition for Writ of Habeas

Corpus, ECF No. 1, is **DENIED WITH PREJUDICE**.

Further, it is **ORDERED** that a certificate of appealability is **DENIED**.

Further, it is **ORDERED** that permission to proceed *in forma pauperis*

on appeal is **DENIED**.

**This is a final order and closes the above-captioned case**.

**IT IS SO ORDERED.**

Dated:  February 7, 2025

                                        s/George Caram Steeh
                                        HON. GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record
on February 7, 2025, by electronic and/or ordinary mail
and also on Travis Wilson #579436, Ionia Maximum
Correctional Facility, 1576 W. Bluewater Highway,
Ionia, MI 48846

s/LaShawn Saulsberry
Deputy Clerk